We can begin. We'll start with the case of U.S. vs. Jelani Lee. Good afternoon. Had I known video was allowed, I would have considered bringing in a TV of myself and my own video camera. Mr. Huff, are you reserving time for rebuttal? I do not. My name is Michael Huff. I represent the appellant Jelani Lee, who I also represented at trial in this matter. If I may, I'd like to begin with what I believe is the fourth issue that I raised in my brief, which was what I would call an unintentional violation of the discovery rules in this case. That being that in this matter the government failed to provide the appellant or defense counsel with a registration card belonging to room 42 of the Red Carpet Inn located, I believe, in Lancaster City, Pennsylvania. And I call it unintentional because basically what was provided to the defendant in discovery in this matter was a photocopy of the front of the registration card. Unfortunately, there was no photocopy made of the back of the registration card in this case, which provided additional information as to who rented that motel room where eventually, as the court knows, drugs were discovered in that courtroom. And it was a very serious violation, that I would argue to the court was highly prejudicial to my client, that no adequate remedy cured that violation. And as a result of that, my client was denied due process and a fair trial. The government cites a senior case for the view that access to an exhibit pre-trial satisfies its discovery obligation. Why isn't that case binding? Well, I think the problem in that case, I think the problem is that the actual exhibit, I don't believe was actually provided until the trial itself. It wasn't even actually provided, I believe. As the court knows, in any jury trial when there's numerous exhibits that are being introduced, the courts generally want all of those exhibits to be reviewed pre-trial, and that if there's any objections to those exhibits, that it should be done before trial to keep the flow of the trial going. Was the exhibit available to you? Well, the exhibit was, all exhibits ultimately, I guess, are ultimately available to the defense counsel to go over to the U.S. Attorney's Office to review. But the practical matter is that those exhibits or anything the government intends to use at trial are always provided pre-trial. And in this case, there was no reason to believe that the information that was provided from the government to defense counsel was the complete exhibit, and that it was the government's responsibility, not defense counsel's responsibility, that if additional information was provided on the back of that registration card, that that information should have been provided to counsel pre-trial. Can I just back up a little bit? Yes, sir. I mean, your briefs say this is a discovery violation. I read Rule 16a. I mean, it has to be the government was required to turn over anything that's within their possession, custody, or control. Now, as I read the briefs, and maybe we can flesh this out a little bit, I thought the original was in the custody, actually, of the Lancaster police. Did the government have more than you had in their own custody before trial? Well, that's why I refer to it as an unintentional. I don't believe that Mr. Miller or the U.S. government intentionally withheld that information to me, and I believe that that may have even been pointed out at the trial itself, that Mr. Miller himself did not actually have the original, and so that he believed that everything had been provided. But even whether it was done intentionally or unintentionally, I don't think that makes any difference. So it doesn't matter if it's a discovery violation or not? Well, I believe it's an unintentional discovery violation that the government has the duty to provide all of the information, needs to do their due diligence to provide all that information to the defendant. And in this case, it was highly prejudicial because so much of the defense in this case was built around the fact that the defendant was arrested, I believe it was on January 7, 2005, and that the only information that we had, even throughout the trial itself, I mean, this did not become apparent until the jury came back and asked Judge Stengel. Why is it prejudicial? Supposing you had the registration card before you started the trial. Supposing the government went up to you and said, here is the exhibit that we previously gave you, but this one shows the front and the back, and it shows the dates. It's because it was such an important piece of evidence that defense counsel was able to argue to the jury that there was no proof beyond a reasonable doubt that my client was there either on January 3rd, 4th, 5th, or 6th. I'm sorry. My question was, supposing the government gave you the registration card on the eve of trial. At that point in time, the defense counsel is going to formulate their defense around the evidence that was presented. It's hard to tell in hindsight what that would have been, but certainly even possibly alibi evidence could have been introduced at court to show that the defendant was not there on those certain dates, which would of course lend credence to the argument that the person whose name the room was registered under, which was I believe Omar Martin, was in fact a different person other than my client. But again, after the trial had concluded, then for the first time it was when the jury was deliberating that they noticed that on the back of that registration card that there was other information that simply had not come out or was discussed at trial. I'm sorry. So what you've got here is new evidence presented in the middle of a trial. But is that any different from, let's say, fingerprints being produced in the middle of a trial? Or, for example, a gun is produced in the middle of a trial? That certainly, if it's relevant, it wouldn't necessarily be excluded. Well, I think the important thing is that counsel has knowledge. And if a gun is being introduced at trial, counsel is certainly going to be aware of that evidence coming in at trial. Supposing the evidence is not discovered except in the middle of trial? Well, again, then something can be done where arguments could be made in front of the judge, outside the presence of the jury, and the court can make a determination as to whether or not the evidence should be admitted or not. And, in many cases, the courts will ask defense counsel if additional discovery time or if additional investigation time would be necessary in order to investigate. And I think that's the point, is that even had this evidence been turned over in the middle of the trial, well, the problem with that is you can't unring the bell. At that point in time, opening statements had already been made. A trial theory had been formulated. And there's simply – in fact, the remedy I would have asked for was a new trial. It would be a mistrial, which is exactly what I'm asking for, basically, at this point, since it didn't come out until after the jury already had the evidence. You have two cases that seem to work directly against you out of the Sixth Circuit and the Tenth Circuit, which say that a discovery violation that changes or alters defense strategy does not warrant a mistrial. Well, again, here, I think it's more than just that. I mean, it could be a matter of, like I indicated before, it could be a matter of alibi, which I would argue to the court is not necessarily a defense strategy or a theory that they're presenting to the jury, but concrete evidence that the defendant was not there on the date. Well, you do have a case that helps you, too. Well, I'll ask the court to rely on that when they grant my motion and give me a new trial. First Circuit seems to side with you. Well, obviously, First Circuit is as intelligent as the Third Circuit. Well, your adversary points out the significance of the jury question, which is what is the information on the back of the registration card and pencil, perhaps indicating that they hadn't already internalized it and used it against your client. They want to know what it is, and then, of course, the district court says disregard it. What is the significance of that question coming back? Well, I mean, I think the problem is that we're left to speculate. I mean, I don't know if the jury was going to come back and say, oh, my gosh, we've got some after-discovered evidence here or some discovery violation here that we need to discuss. I would argue to the court that you can't speculate as to what the jurors were thinking about. Obviously, they thought it was important enough, though, to bring to the court's attention. And, again, it was such an important part of the defense strategy that the defendant was not present or there was no way to prove that he was present during that time that I think the jury bringing it up in the first place shows that they considered it to be significant. And you almost have the jury acting as somewhat of, I guess, the police of the trial, making sure that, hey, wait a minute, you've got information on the back of this car that we never heard about during the trial. Is this something that we should be concerned about? And, again, at that point in time, the cat was already out of the bag and there was nothing that could be done to remedy that. Well, except that the district court then gave an instruction to the jury. Why is it that that's not a cure for whatever prejudice may have occurred? I guess as far as harmless error is concerned, because it was such a significant part of the case, because of the amount and quantity of the drugs that were eventually discovered in that motel room, this was not just simply a small piece of the trial that could have went in or may not have gone in. It was such an integral part of the trial that I would argue that it was not harmless error. Is there any procedure that the district court could have adopted that might have saved the case? I mean, you're talking about your request for a mistrial while the jury's deliberating. So all the testimony had been admitted. I understand that, but obviously the court did, I guess, the only thing that it could have done, I mean, you can't reach into people's minds, obviously, and withdraw information that's already been... Well, the judge basically told the jury to please forget the information that's on the back of the registration card. Of course, there was no testimony about what was on the back either, right? For all they know, one of the lawyers could have jotted something on the back, right? Well, I would hope that that's not what they were thinking. It was a registration card. In other words, the card was there to indicate who was registered to that room on certain dates. It was really significant because it showed that your client was in the room at the time that the drugs were discovered. Or someone named Omar Martin. Well, how about, what about an individual voir dire? Might that have helped the cause? That could certainly be a possible remedy to find out from each individual juror whether or not... Now, on the other hand, again, this is all hindsight. That's the problem with the hindsight. I don't know if I would have even agreed to do that because then, as Your Honor pointed out, now you're drawing more attention to the situation rather than kind of try to sweep it under the carpet to pretend almost that an error had not been committed. So in your view, the inadvertent discovery, as you call it, the violation by the government, demands a new trial in all circumstances. And no curative instruction could have saved the trial. Well, I think you have to look at each case, obviously, as they say, the totality of the circumstances and on a case-by-case basis. And you have to look at, you know, how important that particular piece of evidence was to either the prosecution of the case or the defense of the case. And you can't just, of course, pass a primary rule. Now, the problem is the evidence was not exculpatory. Well, again, and I've considered that argument as well, and it was not exculpatory, but, you know, to be deprived of a fair trial, to be deprived of due process, I would argue to the court, does not necessarily mean that a piece of exculpatory evidence was not brought in, although certainly that would be, I guess, a much stronger argument. But on the other hand, if a piece of evidence is admitted in the trial, that, I would argue to the court, a different trial strategy would have been pursued, even possible plea negotiations. You just don't know, in hindsight, after getting this information, what would have happened. And because of that, I think, you know, it does, it possibly could have changed the outcome of the trial in that there may not have been a trial. And now, at this point in time, my client's serving a life sentence in prison as a result of this conviction. Could you restate the prejudice to you as a result of the jury seeing the document? Yes, I believe that, essentially, a lot of the, perhaps, you know, one of the most important things for any counsel at a trial is the credibility that we have in front of the jury. And when I'm standing up there espousing a claim that the government has not proven, and, in fact, my client, and as a result, my client was not present in the room on those particular dates, that all of a sudden, you know, I'm basically, I wouldn't say made out to look like a liar, since it was not done intentionally by myself or by Mr. Miller. But you have a situation here where my credibility as his attorney in making these arguments to the jury is basically lost. And I don't think that you can get that back. All right. You got the legs knocked out of your trial strategy. Sure did. Anything else, Mr. Hoffman? Nothing. Thank you very much. Thank you. Good afternoon. I am Mark Miller. I represent the government in this matter. With respect to the argument that Mr. Huff just made on what he has couched as a discovery violation, I would submit to the court that his credibility with the jury remained intact throughout the proceeding, through the jury deliberations. And despite his argument, I would submit that the legs of his trial strategy also were not knocked out from under him. Well, wait a second. His argument was that his client was not in a motel room on certain dates. Then the government produces a card before the jury that shows precisely those dates on a registration card. So isn't the jury thinking defense counsel and the defendant are misleading us? I don't believe they are, Your Honor, and the reason being, as was pointed out, the inquiry that was advanced by the jury during the course of its deliberations was a question. Essentially, they wanted to know what the notations were. With respect to how you indicated what would be the best way for the district court to operate under a situation like this, I submit that Judge Stengel's dealing with it was entirely appropriate, and, frankly, he did everything that he should have and could do, specifically the limiting instruction, basically telling the jury to completely disregard the information and to not consider it as evidence in the case. Mr. Huff and his client at that point were in the best possible situation they could possibly be in with respect to that particular piece of evidence. As Your Honor noted, it is not exculpatory evidence. It is evidence that if we were able to get the witness, Kalpana Patel, to testify to it, possibly she could have established that these notations placed Omar Martin, who the government was alleging was, in fact, Jelani Lee, at the motel during the relevant time period. But because that was not part of your case, the defense developed a strategy, a defense strategy, and opened to the jury on the theory that the defense's client was not in the motel room on those days. And, in fact, the defense argued that Jelani Lee was never at the motel room because the defense argued that Omar Martin and Jelani Lee were not the same person. That being the case, with the instruction provided by Judge Stengel, the jury was instructed specifically to disregard it, and as the case law we cited in our brief states, jurors are assumed or presumed to follow instructions provided by the court. And this was very quickly done by Judge Stengel to deal with the issue. You don't think that's like telling a jury to forget the white elephant in the room? I don't believe it is, Your Honor. And, again, I would focus on the nature of the inquiry. If the question had come back from the jury, can you please tell us whether we can apply this to the testimony that was provided by Kalpana Patel or something like that or anything that indicated that they were making connections or logical inferences from the information on the back of the form? And I would ask you to direct your attention back to Ms. Patel's testimony at trial because Ms. Patel did testify on cross-examination by Mr. Popp that there was no registration card that memorialized dates for Omar Martin being there other than on the one specific date that was indicated on the face of the registration card. That was completely consistent with Mr. Huff's trial strategy. He got that which he opened on. He wanted the inference raised that his client was not at that hotel room. Could you go over the proceedings? Who had the card? Was it the Lancaster police? Maybe you could describe how it is that a copy was made and give us an idea of that. Yes, our office has, we handle, as you're aware, the entire eastern district of Pennsylvania. I handle a lot of Lancaster cases. We adopt local cases and take them federally under certain circumstances. The Lancaster police had all evidence in their custody pending trial, including this card. When the police got the card from the motel and brought it back to the police department for reasons known only to whoever photocopied it, they only photocopied the front of the card. So you're saying you had only, in your file back at the U.S. Attorney's Office, all you had was the front of the card? That's correct. And as Mr. Huff indicated when he was arguing, that is the only thing that was turned over in discovery to all defense counsel because that is all of which any of us were aware actually existed, memorializing the stay at the motel. So what's your position on the purported discovery violation? Was there a discovery violation? No, I submit it was not a discovery violation. Would it have been better, obviously, if we had that item? Certainly. I'm pretty diligent about getting discovery together. I could relate for you what is not in the record as to why I never was able to examine this document. But what I would point out is at trial, all defense counsel were physically handed this item by me before it was shown to a witness. All defense counsel had at the very least an opportunity at that point to review the item front and back. When did it come into your possession? Actually at trial? Actually at trial when it was brought into the courtroom by one of the detectives who brought all the evidence down for the actual trial. Obviously, I can admit and I think I'm backed up by the record, I never saw the back of that card. It's bad on me like it is everybody else because I should have looked at it. But obviously, if I had seen it, you can bet your lucky stars, I would have tried to use it. Actually, when you possessed it, was it the day that it was proffered as evidence? Yes, because the exhibit basically came into my hands when the detective walked in with the evidence on the date that it was admitted. It was handed up to the witness, Kalpana Patel, and then it goes into the trial record. So none of us, after that initial opportunity to review it, would have it going through our hands unless we went up to review the exhibit. Did the court invite the attorneys to inspect the exhibits before the exhibits were admitted into the jury room? Yes. As was Judge Stengel's practice, we went through all exhibits and decided what went out and what didn't. Involved in that process certainly was the drugs in the case did not go out with the jury. Other items, anything that would be prejudicial or particularly police reports that would have been admitted as exhibits, which would have had references to inadmissible information, certainly would be culled out of whatever the exhibits were that eventually made their way out with the jury. Your argument is that there is no Rule 16 violation, or is it that it was an inadvertent Rule 16 violation? I guess my argument is it's inadvertent, and it certainly doesn't satisfy the prejudice aspect that would require a new trial. Can we discuss that prejudice? Because Mr. Huff says his entire defense strategy was built on his client not being in the motel room. The strategy that he developed going into this case. And that was completely undermined by the registration card that turned up in the jury room. Well, I also heard Mr. Huff say that it was – there was a possibility, that's his word, or possibly the verdict could have turned out differently. Well, we all hinge on words.  The standard is whether it was likely that the verdict would have turned out completely different. I submit to you that's just simply not the case. His argument that this was his whole trial strategy, his trial strategy, as I said at the outset, was intact because he got the critical testimony from Ms. Patel concerning only one date that she could establish as the only witness in this trial from that motel that his client stayed there. No other record memorializing it. It went one better because he was able to establish through her that if his client had been there or Omar Martin had been there, there should have been other records of it. And he has the judge, when this issue came up, specifically telling the jury, that is not evidence in this case. You should not consider it at all. I submit to you that does not effectively cause Mr. Huff's trial strategy to go out the window. His trial strategy remained intact, and I submit to you that the verdict would not be different had that item actually been turned over. Anything else, Mr. Miller? No, that's it. Judge Ellis, sir, any questions? No, sir. None at all. Thank you. Thank you both. It's a very interesting case. We'll take it under advisement. Thank you.